# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARIO BONANI, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 10-0329 |
| v. ) | |
| ) | Judge Alan N. Bloch |
| MICHAEL J. ASTRUE, ) | Magistrate Judge Cathy Bissoon |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.  RECOMMENDATION

It is respectfully recommended that Plaintiff's Motion for Summary Judgment (Doc. No. 10) be granted, Defendant's Motion for Summary Judgment (Doc. No. 13) be denied, and that this case be remanded for further administrative proceedings.

### II.  REPORT

**BACKGROUND**

Plaintiff Mario Bonani ("Bonani") protectively filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act ("Act") [42 U.S.C. §§ 401-433, 1381-1383f] on January 30, 2007, alleging disability as of January 7, 2006. R. at 10, 159. The applications were administratively denied on July 6, 2007.[1] R. at 10, 70-80. Upon Bonani's request, a hearing was held on May 7, 2009, in Pittsburgh, Pennsylvania before Administrative Law Judge Michael F. Colligan (the "ALJ"). R. at 22-67. Bonani, who was represented by counsel, appeared and testified. R. at 25-

---

[1] This case was a disability redesign prototype case. R. at 58, 20 C.F.R. § 404.906(a). Therefore, Bonani could request a hearing without first requesting reconsideration. 20 C.F.R. § 404.906(a).

51. Testimony was also taken from Bethany Bernarding, with whom Bonani lives, and Mary Beth Kopar, an impartial vocational expert ("VE"). R. at 51-58, 58-64.

In a decision dated July 10, 2009, the ALJ determined that Bonani was not "disabled" within the meaning of the Act. *See* ALJ's Decision, R. at 10-21. The Appeals Council denied Bonani's request for review on January 22, 2010, thereby making the ALJ's decision the final decision of the Commissioner in this case. R. at 1-3. Bonani commenced the present action on March 12, 2010, seeking judicial review of the Commissioner's decision. Doc. Nos. 1 & 3. Bonani and the Commissioner filed motions for summary judgment on July 6, 2010, and September 9, 2010, respectively. Doc. Nos. 10 & 13. These motions are the subject of this report and recommendation, which is being submitted in accordance with 28 U.S.C. § 636(b)(1)(B)-(C).

## **STANDARD OF REVIEW**

This Court's review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-1191(3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently."

*Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Sec'y of Health & Human Serv.*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Sec'y of Health, Educ. & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rule-making authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity."[20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (footnotes omitted).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196.

The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision.

## ANALYSIS

In his decision, the ALJ determined that Bonani had not engaged in substantial gainful activity subsequent to his alleged onset date. *See* ALJ's Decision, R. at 12. Bonani was found to be suffering from back pain, asthma, bipolar disorder, impulse control disorder, depression and antisocial personality disorder. *Id.* Although these impairments were deemed to be "severe" within the meaning of 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii), they did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listing of Impairments" or, with respect to a single impairment, a "Listed Impairment" or "Listing"). *Id.* at 12-16.

In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ assessed Bonani's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work except the claimant is limited to standing and walking for more than two hours, but less than six hours. The claimant is able to sit up to four hours. In addition, the claimant has environmental limitations and needs to work essentially in an air-conditioned environment so that he would not be exposed to temperature extremes, dust, fumes, or odors. In addition, the claimant is limited to working in a low stress environment, defined as a work environment where the claimant would not have to perform more than simple, routine, repetitive tasks that would involve no more than minimal contact with the public and coworkers. R. at 16-17.

Bonani was born on April 26, 1982, making him 23 years old as of his alleged onset date and 25 years old as of the date of the ALJ's decision. R. at 20. He was classified as a "younger individual" under the Commissioner's regulations. 20 C.F.R. §§ 404.1563, 416.963. He had at

least a high school education and the ability to communicate in English. R. at 20. Given the applicable residual functional capacity ("RFC") and vocational assessments, the ALJ determined that Bonani could not return to his past relevant work as a landscaper, deli worker or cashier. R. at 19. Nevertheless, he concluded that Bonani could perform the requirements of representative occupations such as a marker, surveillance system monitor and addresser. R. at 20. The VE's testimony established that these jobs existed in the national economy for the purposes of 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B). R. at 60.

Bonani alleges that the ALJ's decision is not supported by substantial evidence because the ALJ failed to adequately consider medical evidence of his mental and physical impairments and the resulting limitations. Pl.'s Br. (Doc. No. 11). Specifically, Bonani argues that the ALJ failed to: 1) adequately explain his findings at the third step of the sequential evaluation; 2) properly explain his RFC assessment; 3) address his numerous low GAF scores; 4) make findings with respect to the four domains of functioning in his RFC analysis; and 5) adequately explain the rejection of his and Ms. Bernarding's testimony. *Id.* at 4-21. Bonani also argues that the ALJ improperly relied on VE testimony inconsistent with the Dictionary of Occupational Titles ("DOT"). *Id.* at 21-23.

> A. *The ALJ Failed to Adequately Address Bonani's Mental Health Medical Record and GAF Scores*

An ALJ has the duty to evaluate all relevant evidence in the record. *Fargnoli*, 247 F.3d at 41; *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000); *Cotter*, 642 F.2d at 704. An ALJ may not make speculative inferences from medical evidence and cannot reject evidence for no reason or for the wrong reason. *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981), *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505 (3d. Cir. 2009). Therefore, the ALJ must explain the

6

evidence supporting his findings and the reasons for discounting the evidence he rejects, so that the reviewing court can determine if significant probative evidence was improperly rejected or simply ignored. *Burnett*, 220 F.3d at 121; *Cotter*, 642 F.2d at 705-07.

Bonani first contends that the ALJ failed to adequately explain his findings at the third step of the sequential evaluation because he ignored medical opinion evidence, which if credited, may have resulted in a finding that he met listing § 12.04, Affective Disorders. *See* Pl.'s Br. (Doc. No. 11) at 4-8. It is the ALJ's burden to identify the listed impairments found in 20 C.F.R. Part 404, Subpt. P, Appx. 1, relevant to the claimant's impairments. *Burnett*, 220 F.3d at 119-20 n. 2. The claimant bears the burden of showing that his impairment meets or equals a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), *Burnett*, 220 F.3d at 120 n.2 (*citing Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992)). In determining whether a claimant has met this burden, the Commissioner must specify those listings that potentially apply to the claimant's impairments and give reasons why said listings are or are not met or equaled. *Burnett*, 220 F.3d at 119-20 n. 2; *Scatorchia v. Comm'r of Soc. Sec.*, 137 Fed. Appx. 468, 471 (3d Cir. 2005) (Commissioner must evaluate "the available medical evidence in the record and then [set] forth that evaluation in an opinion . . . ."). According to the five-step sequential evaluation, if a claimant meets a listing's criteria, the evaluation ends at step three because the claimant is considered to be *per se* disabled and benefits are awarded. *Santise v. Schweiker*, 676 F.2d 925, 927 (3d Cir. 1992). The United States Supreme Court has held that a claimant must prove that his condition meets every criterion in a listing before he can be considered disabled *per se*. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

The required level of severity for §12.04, Affective Disorders is met when a claimant demonstrates that he meets the requirements of part A and the requirements of either part B or C.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04. R. 14. To meet part B, a claimant must demonstrate a least two of the following: "1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation each of extended duration." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04B.

Here, the ALJ found that Bonani's mental impairments did not meet or medically equal the criteria of listings §12.04, 12.07, or 12.08 because he did not meet the criteria of part B.[2] *See* ALJ's Decision, R. at 15-16. Specifically, Bonani was found to have moderate restriction in his activities of daily living, moderate difficulties in social functioning, and moderate difficulties in regard to concentration, persistence or pace. *Id.* The ALJ determined that Bonani had "experienced no episodes of decompensation during the period at issue." *Id.*

Bonani submitted evidence that he met the listing through the record of his disability examination by Alexandre Y. Dombrovski, a psychiatrist. R. at 343-50. Following his examination on October 18, 2008, Dr. Dombrovski diagnosed Bonani with Major Depressive Disorder and Attention Deficit Hyperactivity Disorder. R. at 349. Dr. Dombrovski also addressed each of the four "B criteria" and found that Bonani had no restriction in his activities of daily living; marked restriction in social functioning; moderate restriction in concentration, persistence or pace; and had experienced four or more episodes of decompensation. R. at 349-50. If credited, Dr. Dombrovski's opinions arguably require that Bonani met or equaled the "B criteria" for listings §§ 12.04, 12.07, and 12.08. Specifically, Dr. Dombrovski's opinion that Bonani had marked restriction in social functioning would have met the requisite level of impairment in that domain. Furthermore, Dr. Dombrovski's conclusion that Bonani had

---

[2] The ALJ did not address whether Bonani met part A or C's criteria. R. at 14-15.

experienced four or more episodes of decompensation is suggestive that Bonani may have met the requisite level of impairment in part B's fourth criterion.[3]

The ALJ cited Dr. Dombrovski's findings in respect to Bonani's activities of daily living and concentration, persistence, or pace, but ignored Dr. Dombrovski's opinions which indicated that Bonani may have met or medically equaled a criterion of part B. *See* ALJ's Decision, R. at 16. Specifically, the ALJ made no mention of Dr. Dombrovski's opinion that Bonani had marked limitations in social functioning and had experienced four or more episodes of decompensation. *Id.* While the ALJ may properly accept some parts of the medical evidence, and reject other parts, he must consider all the evidence and give some cogent reason for discounting the evidence he rejects, particularly when he rejects evidence that suggests a contrary disposition. *Adorno*, 40 F.3d at 48 (citing *Brewster v. Heckler*, 786 F.2d 581, 585 (3d Cir. 1986); *Stewart*, 714 F.2d at 290).

In *Burnett*, the Court of Appeals for the Third Circuit held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements that a condition does not constitute the medical equivalent of a listed impairment are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion

---

[3] The term *repeated episodes of decompensation, each of extended duration* in these listings means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks. If one experiences more frequent episodes of shorter duration or less frequent episodes of longer duration, the ALJ must use his/her judgment to determine if the duration and functional effects of the episodes are of equal severity and may be used to substitute for the listed finding in a determination of equivalence. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.00(A)(4).

sufficient to enable meaningful judicial review.[4] *Burnett,* 220 F.3d at 120; *see Jones*, 364 F.3d at 505 & n.3.

Bonani had the burden to demonstrate that he met the criteria of a listing. *Burnett*, 220 F.3d at 119-20, n. 2. Dr. Dombrovski's opinion that Bonani suffered repeated episodes of decompensation was arguably not supported by the medical record because there was no other evidence of episodes of decompensation in the record. Bonani received only sparse outpatient treatment from Mercy Behavioral Health for a portion of the relevant time period as well as some treatment at Mon Yough Community Services ("Mon Yough"). R. at 33, 50-51, 248-78, 351-74, 389-93. Bonani's May 18, 2007 evaluation at St. Clair Hospital for a mental health evaluation following an altercation resulted in him being discharged the following day. R. at 376-80. The overwhelming evidence in the record discounted the probative value of Dr. Dombrovski's opinion that Bonani had experienced repeated episodes of decompensation, rendering it irrelevant. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008). Therefore, the ALJ did not need to specifically address that specific opinion when determining if Bonani met the criteria of the listing. *Johnson*, 529 F.3d 198 at 204.

However, as discussed below, Dr. Dombrovski's opinion that Bonani had marked limitations in social functioning was supported by the complete medical record, including his consistently low GAF scores and other medical opinions. Notably, although the ALJ noted Willard E. Reitz, M.D.'s opinion that Bonani was moderately limited in his ability to interact appropriately with the public and supervisors in determining whether Bonani's impairments met any listings, he never addressed Dr. Dombrovski's contradictory conclusion anywhere in his

---

[4] The ALJ, of course, need not employ particular "magic" words: "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." *Jones*, 364 F.3d at 505.

decision. *See* ALJ's Decision, R. at 10-20. Therefore, the ALJ neglected to meet his obligation to consider all of the medical evidence. *Adorno*, 40 F.3d at 48.

Furthermore, Bonani contends that the ALJ erred by failing to address his consistently low GAF scores.[5] Pl.'s Br. (Doc. No. 11) at 13-14. Bonani's record includes a number of GAF scores. At Mercy Behavioral Health in March 2007, Bonani's current and highest past year GAF scores were both rated as 35.[6] R. at 256. In May 2007, Bonani's GAF was assessed as "approximately 50"[7] by Dr. Reitz and "about 45" by staff at St. Clair's hospital. R. at 289, 300. In November 2007, Bonani's current and highest past year GAF were both rated as 45 at Mercy Behavioral Health. R. at 354. The following month, Bonani's GAF at Mercy Behavioral Health was rated to be 45. R. at 358. Finally, at Mon Yough, Bonani's GAF was "approximately 45" in October 2008 and 40 in January 2009. R. at 390, 393.

---

[5] A global assessment of functioning ("GAF") score is used to report an individual's overall level of functioning with respect to psychological, social, and occupational functioning. The GAF scale ranges from the lowest score of 1 to 100, the highest score possible. The GAF score considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders, ("DSM-IVR") 34 (4th ed. 2000).

[6] A GAF of 31-40 indicates "some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." DSM-IVR, 32.

[7] A GAF score of 41-50 indicates "some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." DSM-IVR, 32.

Despite Bonani's numerous low-range GAF scores, none of which were higher than 50, the ALJ's decision does not make any mention of these scores. *See* ALJ's Decision, R. at 10-21. Indeed, even though the ALJ documented Bonani's clinical assessment and treatment at Mercy Behavioral Health, consultative examination by Dr. Reitz, emergency mental health evaluation at St. Clair Hospital, psychological evaluation at Mon Yough, and evaluation by Dr. Dombrovski, there was no mention of GAF scores assigned during these medical appointments. *Id.* at 14-15.

Despite the Commissioner's correct contention that "GAF scores are never enough to satisfy Plaintiff's stringent burden in disability cases", they are probative evidence that must be addressed by the ALJ. Def.'s Br. (Doc. No. 14) at 18, *Colon v. Barnhart*, 424 F. Supp. 2d 805, 811-12 (E.D. Pa. 2006). The GAF scale "remains the scale used by mental health professionals to 'assess current treatment needs and provide a prognosis.' [Therefore, the GAF score is] medical evidence . . . and must be addressed by an ALJ in making a determination regarding a claimant's disability." *Colon*, 424 F. Supp. 2d at 812 (E.D. Pa. 2006) (quoting 66 Fed. Reg. 50746, 50764-65 (2000)); *See also Dougherty v. Barnhart*, No. 05-5383, 2006 WL 2433792, at *8 (E.D. Pa. Aug. 21, 2006).

Furthermore, failure to discuss a GAF score that supports serious impairments in social or occupational functioning requires remand. *See Lanza v. Astrue,* No. 08-301, 2009 WL 1147911, at *7 (W.D. Pa. Apr. 28, 2009) (Ambrose, C.J.) (remand required when ALJ failed to specifically discuss GAF scores assigned by physicians whose reports the ALJ discussed); *See also Holmes v. Barnhart*, No. 04-5765, 2007 WL 951637, at *11 (E.D. Pa. Mar. 26, 2007) (remand required because of ALJ's failure to acknowledge claimant's GAF score of 50). The ALJ must demonstrate that he seriously considered and weighed the importance of the GAF scores. *Colon*, 424 F. Supp. 2d at 813; *Span v. Barnhart*, No. 02-7399, 2004 WL 1535768, at *4, *6, *7 (E.D.

Pa. May 21, 2004). If the ALJ discounts GAF scores, he must specify his reasons for discounting this evidence. *Dougherty*, 2006 WL 2433792, at *10; *Span*, 2004 WL 1535768, at *7 (citing *Adorno*, 40 F.3d at 48); *See Diaz*, 577 F.3d at 505-06.

Here, Bonani's record includes not only low GAF scores, but also notations from the same physicians documenting serious mental limitations. Bonani's January 2009 report from Mon Yough detailed his recent history of difficulty with medication, hypersomnia, and temper. R. at 389. Bonani was disheveled and it was noted that his "mood symptoms and impulsive behavior continue." *Id.* Dr. Reitz concluded following his consultative examination that Bonani's ability to respond appropriately to work pressures in a usual work setting and to changes in a routine work setting were markedly impaired. R. at 280. Dr. Dombrovski noted similar limitations and rated Bonani's capacity as "poor" in the following areas: ability to follow work rules, relate to coworkers, deal with the public, interact with supervisors, deal with work stresses, behave in an emotionally stable manner, relate predictably in social settings and demonstrate reliability. R. at 350.

The ALJ's failure to mention any of Bonani's GAF scores coupled with his shallow discussion of the record does not permit a meaningful review of his decision. While the ALJ provided a brief explanation regarding the evidence he relied upon, he simply failed to disclose any reasons for discounting other evidence. *See Span*, 2004 WL 1535768, at *8. The ALJ merely restated the main parts of the record, often times mischaracterizing the complete medical opinion. *See* ALJ's Decision, R. at 19. He relied instead on Bonani's self-reported activities, such as attending Alcoholics Anonymous and Narcotics Anonymous meetings five times a week,

13

and that he lived with his girlfriend.[8] *Id.* The only medical evidence the ALJ specifically addressed to support his decision is Bonani's January 2009 appointment at Mon Yough. *Id.* In doing so, the ALJ "cherry picked" notations from the report such as that Bonani had good eye contact and that there was no suggestion of active hallucinations or association. *Id.*

Specifically, the ALJ ignored that the medical progress report from Bonani's January 2009 appointment at Mon Yough included the observation that "he continues to lose his temper. He says he was working in a grocery store but assaulted a cashier and was fired." R. at 389. Furthermore, the report detailed that Bonani's impulsive behavior continued and his GAF was assessed as a 40. R. at 389-90. The ALJ also ignored Dr. Dombrovski's serious assessed limitations including marked limitations in social functioning such as his poor ability to behave in an emotionally stable manner due to his explosive aggression and mood lability. R. at 346-50. Because of the ALJ's incomplete evaluation of Bonani's GAF scores and his failure to thoroughly review the medical record or discuss evidence which was inconsistent with his conclusion, it is not possible to conclude whether the ALJ's decision that Bonani was not disabled was supported by substantial evidence. *Plummer v. Apfel*, 186 F.3d 422,429 (3d Cir. 1999).

### B. The ALJ's Discussion of Bonani's Physical Impairments

Bonani also contends that the ALJ erred in failing to adequately explain his rejection of physical limitations assessed by Robert J. Jenkins, M.D. *See* Pl.'s Br. (Doc. No. 11) at 9-10. Dr. Jenkins physically examined Bonani on June 11, 2007, in connection with his claim for benefits.

---

[8] "The principle that an ALJ should not substitute . . . lay opinion for the medical opinion of experts is especially profound" in cases involving mental health impairments. *See Morales v. Apfel*, 225 F.3d 310, 317-18 (3d Cir. 2000).

R. at 291-96. Dr. Jenkins concluded that Bonani could bend and kneel occasionally. R. at 292. He also determined that Bonani should never stoop, crouch, balance or climb. *Id.* There were also limitations of abilities to push and pull with upper and lower extremities. R. at 291. The ALJ did not include Dr. Jenkins's assessed postural limitations in his RFC assessment. R. at 16.

The ALJ's only explicit acknowledgement that he was rejecting Dr. Jenkins opinion was: "as for the opinion evidence, the undersigned partially accepts the assessment provided by the consultative examiner, Dr. Jenkins at Exhibit 7F in formulating the above residual functional capacity." *See* ALJ's Decision, R. at 19. However, he noted that "the medical evidence of record fails to document any significant findings." *Id.* Indeed, unlike his rejection of medical evidence pertaining to Bonani's mental limitations, the ALJ supported his partial acceptance of Dr. Jenkins's assessment by relying on contradictory medical evidence, including objective clinical and laboratory findings. *Plummer*, 186 F.3d at 429.

The ALJ noted that following Bonani's January 9, 2006, motor vehicle accident, he was seen in the emergency room of Mercy Hospital. *See* ALJ's Decision, R. at 12. The ALJ specifically noted that X-rays showed no sign of fracture, subluxation or dislocation and that he was discharged the same day and prescribed Motrin for pain management. *Id.* at 13. Among other clinical findings, the ALJ noted: Bonani's January 25, 2006, CT scan of his spine that was within normal limits; an April 22, 2009, x-ray of his chest which showed his lungs to be clear of active distress; a consultative examination in June 2007 revealed normal straight leg extension bilaterally; and there was no radiation of pain to Bonani's buttocks or thighs. *Id.* at 18-19. The

ALJ also noted that Bonani had not seen a doctor for his back for a year and a half "and he takes no medication for his back condition."[9] *Id.* at 19.

An ALJ may properly accept some parts of the medical evidence, and reject other parts, after considering all the evidence and giving some cogent reason for discounting the evidence he rejects. *Adorno*, 40 F.3d 43, 48. Here, the ALJ's decision to reject Dr. Jenkins's limitations noted in his consultative examination was supported by substantial evidence because such limitations were wholly unsupported and contradicted by objective medical findings. On remand, Bonani remains free to introduce further medical evidence to support his allegations of physical impairments. *Stover v. Shalala*, No. 94-1910, 1995 WL 327981, at * 8 (E.D. Pa. May 31, 1995).

### C. Bonani's Additional Claims

Bonani also alleges that the ALJ failed to make findings with respect to the four domains of functioning in his RFC analysis or adequately explain the rejection of his and Ms. Bernarding's testimony. Pl.'s Br. (Doc. No. 11) at 4-21. Bonani also argues that the ALJ improperly relied on VE testimony inconsistent with the Dictionary of Occupational Titles ("DOT"). *Id.* at 21-23. Because it is respectfully recommended that Bonani's case be remanded for the ALJ's failure to consider and analyze all relevant medical evidence regarding his mental impairments, including his low GAF scores, it is unnecessary to examine Bonani's additional claims. A remand may produce different results on these claims, making discussion of them

---

[9] It is relevant to the Commissioner's decision that Bonani is not on pain medication for his back. 20 C.F.R. §§ 404.1529 and 416.929 explain that, in determining the nature and severity of a claimant's symptoms, the Commissioner will consider as one factor the "type, dosage, effectiveness, and side effects of any pain medication" the claimant takes to alleviate said symptoms. *See* 20 C.F.R. § 404.1529(c)(3)(iv); 20 C.F.R. § 416.929(c)(3)(iv).

moot. *See Steininger v. Barnhart*, No. 04-5383, 2005 WL 2077375, at *13 (E.D. Pa. Aug. 24, 2005). ("Having concluded for the above stated reasons that remand to the ALJ for a new evidentiary hearing is appropriate, the Court will not address Plaintiff's other arguments for remand, as the ALJ's findings may be revised in any decision issued following the new hearing."), *Nieves v. Astrue*, No. 08-5178, 2010 WL 629831, at *24 (E.D. Pa. 2010).

## CONCLUSION

For all of the reasons stated above, this case should be remanded for further administrative proceedings. If a consultative examination is necessary or appropriate, one should be ordered by the ALJ. *See Boyd v. Sullivan*, 960 F.2d 733, 736 (8th Cir. 1992) ("[i]t is reversible error for an ALJ not to order a consultative examination such an evaluation is necessary for him to make an informed decision") (citations and internal quotations omitted). Bonani also should be permitted to supplement the medical record if he wishes.

Once additional medical evidence has been gathered, if necessary, and with or without a hearing, the ALJ shall revisit the disability determination beginning at step three of the sequential analysis and determine whether Bonani's mental and physical conditions, alone or in combination, preclude him from engaging in substantial gainful activity. Any finding must be supported by substantial evidence.

Accordingly, it is respectfully recommended that the Commissioner's Motion for Summary Judgment (Doc. No. 13) be denied and that the Plaintiff's Motion for Summary Judgment (Doc. No. 10) be denied to the extent that it seeks an immediate award of benefits and granted to the extent that it seeks a vacation of the Commissioner's decision. It is further respectfully recommended that the case be remanded to the Commissioner for further administrative proceedings.

In accordance with the Magistrates Act, 20 U.S.C. § 636(b)(1) (B) and (C), and Rule 72.D.2 of the Local Rules for Magistrates, objections to this Report and Recommendation are due by October 29, 2010. Responses to objections are due by November 12, 2010.

October 15, 2010
s/Cathy Bissoon
Cathy Bissoon
United States Magistrate Judge

cc (via ECF email notification):

All Counsel of Record